Hash, C. J.
 

 The bill is filed for an account of tlie estate of Francis Mace, in the bands of the defendant Benjamin Mace, his administrator, and against the other defendants, who, it is alleged, have in their possession specific portions of the estate of the intestate, and to enjoin all the defendants from removing from the State any of the slaves belonging to
 
 *6
 
 the intestate. An injunction and sequestration were issued,, and on the coming in of the answers, the injunction was dissolved, and the sequestration taken off. In this decretal order, there is error. The plaintiffs are a portion of the next of kin of Francis Mace, deceased, and charge that the slaves, mentioned in the bill, were of the estate of the intestate, and that the defendant, Benjamin Mace, was duly appointed his administrator, and, as such, took into his possession a number of slaves : that he is squandering the assets, and has no property but his interest in these slaves, and is considered insolvent: and threatens to remove the slaves beyond the jurisdiction of the State. They further charge that thee defendant, Henry Mace, also one of thenext of kin of Francis Mace, possessed himself, by the consent of the administrator, of several of the slaves, among whom was a negro man by the name of Nathan, and who, by a fraudulent contrivance between Henry Mace and Joab Hiatt, has passed into the possession of the latter. The charge is that the plaintiff Wilson, having got Nathan into his possession, refused to give him up to Henry Mace, whereupon the latter sued a writ of replevin, and at the Term, to which it was returned, the defendant, Henry Mace, pretended to borrow of Joab Hiatt $800, for which he gave his note and immediately confessed a judgment upon it, and execution issued which was levied on Nathan and he sold, and Joab Hiatt became the ]) ureliascr. All this was done at the return Term of the replev-in. In his answer, Benjamin admits he took the slaves into his possession as administrator of his father, but alleges they did not belong to Ms father’s estate; He further alleges that the ne-groes had been divided, and that those he had in his possession, had been assigned to him, and relies further upon the length of time he lias been in possession. Henry Mace sets up the same defence in substance, and further admits that the defendant, Joab Hiatt, got into possession of the slave Nathan in the manner set forth in the bill, but denies that there was any fraud contemplated by him or Hiatt: but that he did actually borrow the money from Hiatt, and the inode pursued was adopted to secure to himself the value of Nathan. Hiatt avers that the transaction was
 
 bona fide:
 
 that he did lend the money to .Henry Mace, and that the latter did not return it..
 

 
 *7
 

 We
 
 are not trying the case, but are examining the correctness of the interlocutory order dissolving the injunction, the defences therefore set up by the answers, cannot'be examined; they vfill come up on the final hearing. The principles which govern the question, now under consideration, are .fully examined by Judge Pbabsojj in delivering the opinion of the Court in the case of
 
 Loyd
 
 v.
 
 Heath and
 
 others, Bus. Eq. R. 41. After stating the difference between common and special injunctions, he proceeds—
 

 “ In the other, (that is the latter) a different rule is acteil on, and in as much as to dissolve the injunction would be to allow the injury to be done, and in the forcible words of one of the Chancellors,
 
 a tree that is eat down cannot be m.ade to grow again.
 
 When the plaintiff fails to elicit from the defendant a discovery which admits the allegations of the bill, the bill is allowed to be read as an affidavit on the part of the plaintiff, and, if upon the whole case, the matter is left in doubt, the injunction will be continued until the hearing, so ns to give the plaintiff a chance to support his allegations by proof before a thing, the consequence of which is ineparable, will be allowed to be done.”
 

 Apply the principle thus announced to this case : The defendant, Benjamin Mace, admits he took the slaves into his possession as the administrator of his father, but denies that they were his property. Whether upon the hearing, he can avail himself of such a defence, we are not now called on to decide: it is sufficient for our present purpose, that he has raised the question. It throw's the case into a state of doubt. Bo, also, as to the division : whether it ever took place, vre have no means to ascertain. The bill charges that the defendant is generally regarded as insolvent, except the interest he may have in these slaves: that he threatens to run them from the State, or to sell them, if any one sets up a claim to them. The latter part of this allegation he does not answer, and as to the first part, his-language is, “but he denies his insolvency, or that his condition, as to property is such as to be any matter of concern, inasmuch as he has paid and settled with complainants, years ago, for every cent that he owed them,
 
 *8
 
 and that he owes and is accountable to them for nothing.”— It is too evident that the answer is evasive as to his insolvency, and altogether silent as to his threat of running the slaves out of the State. In the cases of
 
 McDaniel
 
 v.
 
 Stoker,
 
 5 Ire. Eq. 274, and
 
 Griffin
 
 v.
 
 Carter,
 
 ibid 413, it was
 
 held
 
 that, on a motion to dissolve an order, restraining a defendant from running slaves out of the State, that the bill might be read as an affidavit, and as it appeared, taking the whole together, that the question was doubtful, inasmuch as the slaves were within the control of the Court, they should be kept so until the final hearing.
 

 Our case is a stronger one than either of the two last, referred to. Here the defendant, Benjamin Mace, gives no answer to the allegation of the threat and palpably evades the charge of insolvency. The defence of Henry Mace is so mixed up with that of Benjamin, that the latter has adopted his mswer to a certain extent as his. It must share the same fate. He sets up the alleged settlement which is denied by .the bill: there is, then, oath against oath, and there is no power in the Court, on the present question, to decide it. Hiatt, if not a necessary party, is properly made one. He has knowingly mingled in the strife between these parties, and by means, strongly suspicious, has got into his possession one of the slaves to wit, Nathan. He is, therefore, properly a party defendant.
 

 There is another principle involved in this case, which shows that the injunction ought to be continued to the hearing. In one part of the answer, the defendant admits that lie took possession of the slaves as the property of his father, as his administrator, but he denies that he is bound to account for them as he, many years ago, settled with complainants and paid them all they were entitled to of the estate, and pleads the receipts given by them. It is a rule in equity that where a defendant in answer to an injunction bill admits the equity charged in the bill, but brings forward a new fact in avoidance of it, the injunction must be continued to the hearing.
 
 Strong
 
 v.
 
 Menzies,
 
 6 Ire. Eq. 544.
 
 Deaver
 
 v.
 
 Erwin,
 
 7 Ire. Eq. 250.
 

 
 *9
 
 Several other matters of defence were set tip in the answers, and others urged in the argument before us, hut none of them came up before us upon this investigation. When the cause is heard, the Court will then decide whether length of time, or want of proper parties or multifariousness, will protect the defendant.
 

 The injunction and sequestration ought to have been continued until the hearing, and the order for their dissolution must he reversed. This opinion will he certified. Defendants must pay the costs of this Court.
 

 1'eb Curiam. Decree accordingly.